## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

William Pearson (K54693),     )
     )
     Petitioner,     )
     )     Case No. 21 C 50148
     v.     )
     )     Hon. Iain D. Johnston
David Gomez, Warden,     )
Stateville Correctional Center,     )
     )
     Respondent.     )

### MEMORANDUM OPINION AND ORDER

Petitioner William Pearson, a prisoner at the Stateville Correctional Center, brings this *pro se* habeas corpus action under 28 U.S.C. § 2254 challenging his 2003 murder conviction from the Seventeenth Judicial Circuit Court, Winnebago County, Illinois. (Dkt. 1.) For the reasons below, this Court denies Pearson's § 2254 petition and declines to issue a certificate of appealability.

### BACKGROUND[1]

#### I.    The Shooting and Pearson's Trial

On September 22, 2002, Scott Bowers (the victim) was fatally shot in the head while driving on Score Street in Rockford, Illinois. (Dkt. 17-1, p. 2) (*People v. Pearson*, No. 2-04-0815, (Ill. App. Ct. 2005) (unpublished order under Illinois Supreme Court Rule 23)). When the police arrived on scene, they found his car crashed into an apartment building and Bowers in the driver's seat. *Id.* The police recovered two small plastic baggies of an "off-white, rock-like substance" that appeared to be crack cocaine from the driver's area of the vehicle. *Id.* They also found a .38 caliber

---

[1] The following facts are drawn from the state court record, (Dkt. 17), and state appellate court opinions. (Dkt. 17-1) (*People v. Pearson*, No. 2-04-0815 (Ill. App. Ct. 2005) (unpublished order under Illinois Supreme Court Rule 23)); *People v. Pearson*, 2020 IL App (2d) 180066-U. The state court's factual findings are presumed correct unless Petitioner rebuts this presumption by clear and convincing evidence. *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28 U.S.C. § 2254(e)(1); *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018)).

shell casing directly across the street from the crash and two cigarette butts near the victim's car. *Id.* Pearson was arrested three days later in connection with the killing and charged with two counts of first-degree murder. *Id.* at 1.

A jury trial was set for April 7, 2003. *People v. Pearson*, 2020 IL App (2d) 180066-U, ¶ 6. At the final pretrial conference on April 3, 2003, the State orally (and later in writing) moved for a continuance pursuant to 103-5(c) of the Illinois Code of Criminal Procedure,[2] as DNA lab test results of the cigarette butts found at the crime scene were not expected to be received until June. *Id.* at ¶¶ 4, 7, 10. The prosecutor explained:

> The crime lab [was] not going to be finished with their testing of the evidence for DNA until June 1[, 2003]. I had spoken to them months ago when I first sent them the evidence, and they informed me that it would be approximately two months. It's been approximately two months, so apparently they're more behind than they thought. So at this time I don't believe I can proceed to trial.

*Id.* at ¶ 7 (alterations in original). The prosecutor further noted the DNA evidence was material to the case as it could link Pearson to the crime scene. *Id.* at ¶ 8. Pearson objected to continuing the trial. *Id.* at ¶ 7.

Citing to section 103-5(c) on the record, the trial court noted that an extension may be granted where the State has exercised due diligence to obtain the evidence and the evidence is material to the case. *Id.* at ¶ 8. The trial court found the State exercised due diligence in delivering the evidence to the crime lab several months ago, and that the evidence was material. *Id.* The trial court therefore granted the State an extension over Pearson's objection and continued the case for status on June 4, 2003. *Id.* at ¶¶ 8, 11. Trial was thereafter set to commence on August 4, 2003. *Id.*

---

2 Section 5/103-5(c) provides that "[i]f the court determines that the State has exercised without success due diligence to obtain results of DNA testing that is material to the case and that there are reasonable grounds to believe that such results may be obtained at a later day, the court may continue the cause on application of the State for not more than an additional 120 days." 725 ILCS 5/103-5(c).

Before the start of trial, Pearson filed several motions *in limine*. (Dkt. 17-9, p. 87-93.) One of the motions sought to bar testimony of Pearson's apparent illegal drug possession at the time of his arrest. (Dkt. 17-1, p. 2.) Pearson argued that the evidence was not relevant to any material issue in the case, and the prejudicial effect of the evidence would substantially outweigh any probative value it may have. *Id.* The trial court denied the motion, finding the evidence that Pearson was in possession of drugs was probative of the State's theory that the murder involved supposed drug sales, and the probative nature of this testimony would not be substantially outweighed by its prejudicial effect. *Id.* The trial court's ruling was limited to evidence that Pearson possessed drugs at the time of his arrest—evidence that Pearson was in possession of drugs at any other time was not allowed. *Id.*

Pearson also filed a motion to dismiss, arguing a speedy trial violation had occurred where he was not brought to trial within 120 days, and the continuance granted upon the State's motion exceeded the additional 120-day extension permissible under section 103-5(c). *Id.* at 94. The trial court denied the motion, concluding the 120-day extension commenced upon the conclusion of the 120-day statutory speedy-trial period and, therefore, there was no violation of Illinois' 120-day rule. *Pearson*, 2020 IL App (2d) 180066-U, ¶ 12.

At trial, two eyewitnesses testified that they observed Pearson interacting with the victim at the time of the shooting. *Id.* at ¶ 13. Mary Taylor testified that she was sitting outside drinking beer when she saw a white car pull to the side of the road to make a U-turn. (Dkt. 17-1, p. 2.) She observed a pedestrian approach the car, and heard the pedestrian and driver mumble something to each other. *Id.* at 3. She then watched as the pedestrian pulled out a gun and shot the driver. *Id.* Taylor identified Pearson as the pedestrian who shot the victim. (Dkt. 17-10, p. 1032.) Taylor

explained that, after the shooting, she watched the victim's car crash into a building on her street. (Dkt. 17-1, p. 3.) She lost sight of Pearson following the crash. *Id.*

Michael Jones testified that he was sitting outside when the victim pulled his car up near him. *Id.* at 4. Jones waved the victim away because he heard the victim had been driving around the neighborhood posing as a buyer of crack cocaine and driving off with the drugs without paying. *Id.* Jones then observed the victim pull alongside Pearson and ask if he had any "crack," but explained that Pearson did not respond to the question. *Id.* Moments later, Jones heard the car accelerate and observed Pearson running alongside the car with his arm partly inside the driver's window, trying to keep up. *Id.* Jones observed the car crash into a building and saw Pearson run away. *Id.* He denied hearing a gunshot or seeing Pearson with a gun. *Id.*

Jones admitted that he twice lied to the police regarding the incident—first telling them that he was not a witness to the incident, and later telling them that he did not see Pearson at the scene of the crime. *Id.* at 4-5. He also admitted to lying to the grand jury. *Id*. at 5. But while he was in custody on a drug possession charge, he decided to come forward with the truth after he had been accosted by men who knew Pearson and knew about Jones' grand jury testimony. (Dkt. 17-10, p. 1108-11.) At that time, he wrote a note to the detectives investigating Bowers' death, and gave them a statement, which he signed. *Id.* Jones acknowledged that he pled guilty to a lesser offense than he was charged for in his drug case, but denied receiving any benefit in exchange for his testimony. (Dkt. 17-1, p. 5.)

Douglas Haley, an acquaintance of Pearson, testified that he was outside when he heard gunshots followed by a sound "like something ran into something." *Id.* at 3. Later, Haley was driving toward the west side of Rockford when he encountered Pearson who gestured for him to stop. *Id.* He explained that Pearson handed him a chrome .38 caliber handgun and asked him to

"'hold' the gun for him," which Haley did. *Id.* Haley testified that he initially lied to police officers about the incident, but eventually came forward with the truth once he learned that he was suspected of hiding the murder weapon. *Id.* at 4. He then led the officers to the gun. *Id.*

Ballistics testing established that the gun Pearson gave Haley matched a shell casing found at the scene of the shooting. *Id.* Additionally, the results of the DNA testing also established that the saliva of one of the cigarette butts recovered from the scene matched Pearson. *Id.* at 2.

Rockford police officer Mark Sander testified that three days after the murder, he responded to an incident of a suspicious vehicle. *Id.* at 5. When he arrived, he saw two men inside a moving truck, and another man crouched down behind the truck. *Id.* Officer Sander approached the man and recognized him to be Pearson, who had previously been identified as a suspect in the murder investigation. *Id.* Officer Sander arrested Pearson and a search of his person revealed a cellphone, a pager, and several empty plastic baggies. *Id.* Officer Sander also recovered from behind the truck a plastic baggie containing several smaller plastic baggies that themselves contained a chunky, off-white substance. *Id.* The officer testified that in his experience in law enforcement and working on narcotics investigations, he recognized the substance as crack cocaine. (Dkt. 17-10, p. 1003.) There was no evidence that the substance was tested to confirm the presence of drugs. (Dkt. 17-1, p. 5.)

Rockford police officer Mark Jimenez testified as to his interview with Pearson following his arrest. *Id.* at 6. Officer Jimenez explained that Pearson waived his *Miranda*[3] rights and confessed to shooting the victim. *Id.* According to Officer Jimenez, Pearson explained that he had gone outside to get some cigarettes from his car when he saw someone he knew as "Spade" (who Jimenez identified as Mike Jones) speaking with the victim. *Id.* Pearson and Spade started talking

---

3 *See Miranda v. Arizona*, 384 U.S. 436 (1966).

after the victim drove away, but when the victim's car reapproached driving erratically, Spade handed Pearson a gun. *Id.* Pearson confessed that after the victim pulled up next to them, he pulled out the gun and pointed it at the victim's head. *Id.* He claimed that he only intended to scare the victim out of the car so he could beat him up, but admitted that he intended to fire shots at the car if the victim tried to drive away. *Id.* Pearson told the officer that the car started accelerating and his hand was struck by the car frame, causing the gun to accidentally discharge. *Id.* He explained that after the victim's car crashed into the building, he got into his car and fled the scene. *Id.* As he was driving, he saw Haley, gave him the gun, and told him to get rid of it. *Id.* at 6-7. When he returned to his apartment, he told his girlfriend that if the police asked her any questions, she should tell them Spade shot the victim. *Id.* at 7. Officer Jimenez asked Pearson to reduce his statement to writing, but Pearson refused. *Id.*

The trial court instructed the jury on two counts of first-degree murder—one count under a "strong probability" theory and the other count under a "forcible felony" theory. *Id.* at 1-2, 8; *See* 720 ILCS 5/9-1(a)(2) (a person commits murder if "he or she knows that such acts create a strong probability of death or great bodily harm to that individual"); 720 ILCS 5/9-1(a)(3) (a person commits murder if he or she "commits or attempts to commit a forcible felony" and "in the course or furtherance of such crime or flight therefrom" causes the death of a person). An instruction was also given on the lesser-included offense of involuntary manslaughter. (Dkt. 17-1, p. 8.) The jury found Pearson guilty of first-degree murder under a strong probability theory, but not guilty of felony murder. *Id.* He was sentenced to a 50-year term of imprisonment. *People v. Pearson*, 2020 IL App (2d) 180066-U, ¶ 2.

Following his conviction, Pearson filed a motion for a new trial, alleging newly discovered evidence in the form of Mary Taylor's recantation of her trial testimony. (Dkt. 17-1, p. 8.) The

motion was set for an evidentiary hearing where Taylor testified regarding an interview that she had with a defense investigator a few weeks after Pearson's trial. *Id.* at 8. The trial court denied the motion, finding Taylor's testimony at the hearing "vague" and "uncertain," and concluding, in light of the other evidence at trial, that this allegedly "new evidence" was not of such a conclusive character that it would change the result on a new trial. *Id.* at 10; (Dkt. 17-11, p. 417.)

## II.    Direct Appeal and Post-Conviction Proceedings

Pearson appealed his conviction, arguing the trial court erred in allowing "other crimes" evidence that he possessed what appeared to be illegal drugs at the time of his arrest, and that his trial counsel was ineffective for failing to request a limiting jury instruction on such evidence.[4] (Dkt. 17-1.) The state appellate court rejected Pearson's claims and affirmed his conviction. *Id.* Pearson renewed his arguments in a *pro se* petition for leave to appeal (PLA), which the Supreme Court of Illinois denied. *People v. Pearson*, No. 102981, 857 N.E.2d 680 (Ill. Sept. 27, 2006) (Table).

Pearson then brought a *pro se* postconviction petition pursuant to Illinois' Post Conviction Hearing Act, 725 ILCS 5/122-1. *Pearson*, 2020 IL App (2d) 180066-U, ¶ 16. His petition was advanced to the second stage of postconviction proceedings, and Pearson was appointed counsel. *Id.* Counsel filed an amended postconviction petition which argued, in relevant part, that Pearson's right to a speedy trial was violated where the trial court erred in granting the State an extension to obtain DNA test results for evidence that was not material to the case, and that Pearson's appellate counsel was ineffective for failing to raise the speedy-trial issue on direct appeal. (Dkt. 17-9.) The

---

4 The briefs from Pearson's direct appeal are not included in the state court record. (Dkt. 17.) According to Respondent, counsel "requested the briefs filed in petitioner's direct appeal from the state appellate court but was informed that they are no longer available." (Dkt. 16, p. 4.)

trial court denied the amended petition. (Dkt. 17-4) (*People v. Pearson*, No. 02-CF-2763 (Cir. Ct. Winnebago County, Dec. 19, 2017)).

Pearson, through counsel, appealed the trial court's denial of Pearson's speedy trial and ineffective assistance of appellate counsel claims. *Pearson*, 2020 IL App (2d) 180066-U. The state appellate court affirmed, *id*., and the Supreme Court of Illinois denied Pearson's *pro se* postconviction PLA, (Dkt. 17-7), which raised the same two claims. *People v. Pearson*, No. 126164, 154 N.E.3d 814 (Ill. Sept. 30, 2020) (Table). Pearson now brings the instant habeas corpus petition before this Court. (Dkt. 1.)

## DISCUSSION

Pearson's § 2254 petition raises the following claims for habeas corpus relief: (1) he was denied a fair trial and due process of law by the admission of "other crimes" evidence; (2) he was denied effective assistance of counsel where his trial attorney failed to request a limiting instruction on "other crimes" evidence; (3) he was denied his right to a speedy trial where he was not brought to trial within 120 days of being taken into custody; and (4) he was denied effective assistance of appellate counsel for failing to raise the speedy trial issue on direct appeal.[5] (Dkt. 1, p. 6-14, 16-28.) As explained below, none of Pearson's claims warrant relief, as they are either non-cognizable, procedurally defaulted, or meritless.

---

5 In the memorandum of law submitted in support of his habeas corpus petition, Pearson asserts his intention to raise the claims he exhausted in state court proceedings. (Dkt. 1, p. 35-36.) Respondent construed this assertion to mean that Pearson's "other crimes" evidence claim (asserted as Ground 1 in the petition) raises the two claims Pearson presented on direct review: the evidentiary argument and the related ineffective assistance claim regarding counsel's failure to request a limiting jury instruction. (Dkt. 16, p. 7.) Likewise, Respondent interpreted Pearson's speedy trial claim (asserted as Ground 2 in the petition) as raising both the speedy trial argument and the related ineffective assistance of appellate counsel claim that Pearson presented in postconviction proceedings. *Id.* Respondent therefore divided the two grounds asserted in the habeas corpus petition into four separate claims. *See id.* at 7-16. Pearson adopted the same organization in his reply brief. (Dkt. 20.) This Court adopts the parties' organization of the claims.

## I.     28 U.S.C. § 2254(d)'s Standard

A federal court may grant habeas relief following an adjudication on the merits in state court only if the decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Armfield v. Niklaus*, 985 F.3d 536, 540-41 (7th Cir. 2021). Section 2254(d) reflects the view that "federal habeas review cannot serve as 'a substitute for ordinary error correction through appeal," but rather "is an 'extraordinary remedy' that guards against 'extreme malfunctions in the state criminal justice systems." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1731 (2022) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)).

A state court decision is "contrary to" clearly established federal law "if the state court 'applie[d] a rule different from the governing law set forth' in Supreme Court decisions or decided a case differently than the Supreme Court has 'on a set of materially indistinguishable facts.'" *Corral v. Foster*, 4 F.4th 576, 582 (7th Cir. 2021) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). An "unreasonable application of" clearly established federal law occurs when "the state court correctly identified the governing rule from Supreme Court precedent but "unreasonably applie[d] it to the facts of the particular case.'" *Id.* (citation omitted). This requires the habeas petitioner to "show that the state court's ruling … was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks and citation omitted). Finally, "[u]nder § 2254(d)(2), a [state-court] decision involves an unreasonable determination of facts if it rests upon fact-finding that ignores the clear and convincing weight of

the evidence." *Goudy v. Basinger*, 604 F.3d 394, 399-400 (7th Cir. 2010) (citing *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003)).

The relevant state-court decision for this Court's consideration "is that of the last state court to address a given claim on the merits." *Makiel v. Butler*, 782 F.3d 882, 896 (7th Cir. 2015) (citing *Greene v. Fisher,* 565 U.S. 34, 40 (2011)).

### A.  Claim One:  Admission of Other Crimes Evidence

Pearson first argues that he was denied his right to a fair trial and due process of law where Officer Sander testified that plastic baggies containing a substance appearing to be crack cocaine were recovered from the scene of Pearson's arrest three days after the murder. (Dkt. 1, p. 6-11, 37); (Dkt. 20, p. 2.) He contends this testimony was improper "other crimes" evidence, and its admission was prejudicial as it allowed the jury to infer he had a criminal propensity. (Dkt. 1, p. 6-11.)

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68 (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)); *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004) ("errors of state law in and of themselves are not cognizable on habeas review"). Whether evidence in a criminal trial was properly admitted is a question of state law, and "is no concern of ours unless it is so egregiously prejudicial as to implicate constitutional principles." *Richardson v. Lemke*, 745 F.3d 258, 275 (7th Cir. 2014); *Stomner v. Kolb*, 903 F.2d 1123, 1128 (7th Cir. 1990) ("[A] federal court will not review evidentiary questions unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right.").

Although Pearson couches his evidentiary claim in the context of the due process clause in his habeas corpus petition, he did not raise such an argument in state court proceedings. Pearson claims to have exhausted this issue on direct review. (Dkt. 1, p. 35.) But his brief and PLA on direct appeal argued only an issue of state law, namely whether the trial court abused its discretion in allowing Officer Sander to testify that apparent drugs were found at the time of his arrest. *See* (Dkt. 17-1, p. 10-11); (Dkt. 17-2, p. 20) (Pearson's direct appeal PLA argued "[t]he trial court abused its discretion by admitting this prejudicial testimony, which served only to demonstrate a propensity for the defendant to commit [the] crime."). An argument that the trial court "abused its discretion" on an evidentiary issue does not amount to a claim that Pearson's due process rights were violated. *See Brown v. Melvin*, No. 15 C 50013, 2017 WL 5591627, at *4 (N.D. Ill. Nov. 21, 2017). Rather, Petitioner's "other crimes" evidence claim on direct review related only to an alleged error of state law, which falls outside the scope of federal habeas review. *Estelle*, 502 U.S. at 67-68; *Brewer v. Aiken*, 935 F.2d 850, 855 (7th Cir. 1991) ("We do not sit as a super state supreme court to review error under state law…").

For Pearson to have satisfied the exhaustion requirement to bring the due process claim that he now asserts in his § 2254 petition, he was required not only to assert his claim in one full round of state court review, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), but also to "fairly present the federal nature of his claim to the state court by submitting 'both the operative facts and the controlling legal principles.'" *Crockett v. Hulick*, 542 F.3d 1183, 1192 (7th Cir. 2008) (quoting *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008)). The state courts must have been "apprised of the constitutional nature of the claim" in order for them to have "had a fair opportunity to consider the federal claim." *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006). "If the facts presented do not evoke a familiar constitutional constraint, there is no reason to believe the state

courts had a fair opportunity to consider the federal claim." *Id.* Pearson made no mention of a due process violation resulting from the admission of "other crimes" evidence to the state courts on direct review. His claim is therefore procedurally defaulted. *See Sanders v. Radtke*, 48 F.4th 502, 509 (7th Cir. 2022) ("If a petitioner fails to properly assert a federal claim at each level in the state court system, the claim is procedurally defaulted.").

"Procedural default may be excused, however, where the petitioner demonstrates either (1) 'cause for the default and actual prejudice' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice,'" i.e., new, reliable evidence exists such that no reasonable trier of fact would have found him guilty had such evidence been presented. *Thomas v. Williams*, 822 F.3d 378, 386 (7th Cir. 2016) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Pearson argues that cause exists to excuse the procedural default due to his counsel's ineffective assistance. (Dkt. 1, p. 38.)

To demonstrate cause, "the prisoner must 'show that some objective factor external to the defense impeded [hi]s efforts to comply with the State's procedural rule.'" *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Ineffective assistance of counsel can constitute cause to set aside a procedural default. *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010). "However, a claim of ineffectiveness must itself have been fairly presented to the state courts before it can establish cause for procedural default of another claim." *Lewis*, 390 F.3d at 1026 (citing *Edwards v. Carpenter,* 529 U.S. 446, 452-54 (2000)). Pearson has not exhausted any ineffective assistance of counsel argument relating to his claim that the admission of "other crimes" evidence amounted to a violation of due process.[6] He therefore cannot excuse the default of this claim on these grounds.

---

[6] Although ineffective assistance of counsel "is a single ground for relief," the failure "to assert in the state courts a particular factual basis for the claim of ineffective assistance" will lead to a procedural default. *Pole v. Randolph*, 570

Nor has he demonstrated that a fundamental miscarriage of justice would occur if this Court did not review his claim on the merits. "The fundamental miscarriage of justice standard erects an extremely high bar for the habeas petitioner to clear. It applies only in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted." *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013) (citing *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). "To pass through the actual-innocence gateway to a merits review . . ., [a] petitioner must have 'new reliable evidence . . . that was not presented at trial . . . and must persuade the district court that it is 'more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016) (quoting *Schlup*, 513 U.S. at 324, 327).

Pearson argues that the "improper admission of the prejudicial other crimes testimony…improperly bolstered the incredible and perjured testimony of jailhouse informant Michael Jones, who testified that he heard [Pearson] engage in a drug transaction with the victim." (Dkt. 1, p. 13.) He points to the fact that Jones initially told detectives he did not witness the shooting and lied to the grand jury, but later implicated Pearson in the crime while in custody on a drug possession charge for which he received a term of probation. *Id.* This, however, is not new evidence. Jones testified to these matters at trial. (Dkt. 17-10, p. 1102-11). "[A]n actual innocence claim involves evidence the trial jury did not have before it." *Jones*, 842 F.3d at 461 (internal quotation marks and citation omitted). Pearson does not present any new evidence establishing his actual innocence. He therefore cannot invoke the miscarriage-of-justice exception to excuse his default.

---

F.3d 922, 934-35 (7th Cir. 2009) (citations omitted). Thus, the fact that Pearson may have preserved an ineffective assistance claim on a single issue (e.g., Claim Two discussed below) does not help to excuse the defaults on other myriad issues. *See Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (failing to assert a specific ground of ineffective assistance leads to procedural default).

Even if Pearson had properly preserved a constitutional claim relating to the admission of "other crimes" evidence at trial, he would not be entitled to federal habeas corpus relief. The state appellate court on direct review (the last reasoned state court decision on this claim), determined the evidence of Pearson's apparent possession of crack cocaine was relevant to the context of the murder, and its prejudicial effect did not substantially outweigh its probative value as the "State directed little of the jury's attention to [Pearson's] possession of the supposed drugs," instead "rely[ing] primarily on direct evidence of [Pearson's] guilt in the form of eyewitness accounts and [Pearson's] own confession." (Dkt. 17-1, p. 12-13.) Although the state appellate court's decision was based "entirely on state rules of evidence," the decision is entitled to § 2254(d) deference "so long as neither the reasoning nor the result of the state court decision contradicts the Supreme Court's decisions." *Richardson*, 745 F.3d at 275 (citing *Early v. Packer*, 537 U.S. 3, 8 (2002)).

The state appellate court's decision was neither contrary to, nor an unreasonable application of, Supreme Court precedent. "When engaging in an evidentiary due process analysis," the inquiry is often simplified to "whether the probative value of the evidence is greatly outweighed by the prejudice to the accused" such that "it influenced the jury so heavily and so improperly as to violate fundamental conceptions of justice." *Richardson*, 745 F.3d at 276 (citations omitted); *Anderson v. Sternes*, 243 F.3d 1049, 1053 (7th Cir. 2001) ("habeas relief is appropriate only if the erroneous evidentiary rulings were so prejudicial that [they] compromise[d] the petitioner's due process right to a fundamentally fair trial," i.e., the error "produced a significant likelihood that an innocent person has been convicted") (citation omitted) (alterations in original).

As the state appellate court concluded, the evidence that Pearson was in the possession of a substance that resembled crack cocaine at the time of his arrest was relevant to "the State's theory

that the killing was not a random act of violence but arose from a drug transaction that went sour." (Dkt. 17-1, p. 12.) This theory was supported by witness testimony showing that the victim, before he was murdered, had been swindling people out of money by pretending to buy crack cocaine without paying, and was further corroborated by the recovery of two small plastic baggies of a crack cocaine-like substance from the driver's seat of the victim's car following his death. *Id.* at 2, 4. The evidence that Pearson was found with apparent crack cocaine three days later thus provided a probative link to the victim's fraudulent drug transactions and an apparent motive behind the killing.

To the extent Pearson was prejudiced by this evidence, the prejudice did not substantially outweigh the evidence's probative value. *See Richardson*, 745 F.3d at 276 ("probative evidence always is [prejudicial]—that's the point"). The officer's testimony on the issue was brief, (Dkt. 17-10, p. 1001-06), and though the State argued in closing argument that Pearson murdered the victim because '[h]e didn't get the money he wanted for his crack," (Dkt. 17-11, p. 144), the totality of the State's closing argument was limited to establishing only a probative connection between the baggies of an "off-white chunky substance" found in the victim's car and the baggies of an "off-white chunky substance" found at the time of Pearson's arrest. (Dkt. 17-11, p. 221-22.)

Further, the drug evidence was not the only evidence linking Pearson to the murder. Taylor observed Pearson shoot the victim from across the street. (Dkt. 17-10, p. 1031-33.) Jones saw the victim trying to drive away from Pearson as Pearson ran to keep up with the vehicle to not let him get away. (Dkt. 17-10, p. 1031-33.) Haley heard gunshots and then was approached by Pearson with a .38 caliber handgun who told him to "hold it for him." *Id.* at 956-57. Ballistics testing linked that gun to an empty shell casing found at the crime scene, and DNA evidence from a cigarette butt found near the victim's car matched Pearson. (Dkt. 17-10, p. 924, 1198-1205.) Most

importantly, Pearson placed himself at the scene with a gun in his hand, pointed at the victim's head, and admitted to shooting the victim. (Dkt. 17-10, p. 1179-81.) Given the overwhelming evidence of Pearson's guilt, the limited testimony and argument regarding his apparent drug possession does not create a likelihood, let alone a significant one, that an innocent person was convicted. *Anderson*, 243 F.3d at 1053.

For all the reasons stated above, Claim One is denied.

**B.      Claim Two:   Ineffective Assistance of Trial Counsel**

Pearson next contends that he was denied effective assistance of trial counsel where his trial attorney failed to request a limiting jury instruction on "other crimes" evidence, thereby allowing the jury to consider the evidence of Pearson's apparent drug possession for an improper purpose. (Dkt. 1, p. 11-13); (Dkt. 20, p. 3.) The state appellate court on direct review (the last state court to address this claim) rejected Pearson's argument, concluding there was no reasonable probability Pearson would have been acquitted had his trial counsel requested a limiting instruction. (Dkt. 17-1, p. 14-15.)

As the state appellate court correctly noted, ineffective assistance claims are governed by the two-prong standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). (Dkt. 17-1, p. 13-14) (citing *Strickland*, 466 U.S. at 687, 694, 697). To establish a Sixth Amendment violation of ineffective assistance, Pearson must demonstrate both: (1) "counsel's performance was deficient," i.e., he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "the deficient performance prejudiced the defense," i.e., "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The state appellate court resolved Pearson's ineffective assistance claim on *Strickland*'s prejudice prong, which was perfectly acceptable to do.

*See Strickland*, 466 U.S. at 697. ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.") As the state court noted, Pearson needed to demonstrate "a reasonable probability that, but for [his counsel's] substandard performance, the result of the proceeding would have been different." (Dkt. 17-1, p. 13) (citing *Strickland*, 466 U.S. at 687.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citing *Strickland*, 466 U.S. at 694.) The state appellate court's determination that Pearson was not prejudiced by his trial counsel's alleged ineffectiveness in failing to ask for a limiting instruction "is entitled to great weight in a federal habeas corpus proceeding." *Gilbreath v. Winkleski*, 21 F.4th 965, 991 (7th Cir. 2021) (internal quotation marks and citation omitted).

In applying this standard to Pearson's claim, the state appellate court concluded that there was ample evidence, beyond the "other crimes" evidence, from which a rational jury could find beyond a reasonable doubt that Pearson murdered the victim. (Dkt. 17-1, p. 14-15.) This conclusion was not unreasonable. *See Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming support.").

As discussed above, the weight of the evidence was stacked heavily against Pearson: eyewitnesses,[7] ballistics evidence, and DNA testing all connected Pearson to the crime. Indeed,

---

7 As for eyewitness Mary Taylor's "recantation" of her trial testimony, Pearson did not challenge the trial court's denial of his motion for a new trial on direct review. (Dkt. 17-1, p. 15.) Nevertheless, "[d]isbelief of recantations is sensible," *Mendiola v. Schomig*, 224 F.3d 589, 593 (7th Cir. 2000), and the state trial court's disbelief of Taylor's recantation was not an unreasonable determination of fact. *See* § 2254(d)(2); *Sprotsy v. Buchler*, 79 F.3d 635, 643 (7th Cir. 1996) ("The resolution of a factual issue that involves the trial court's evaluation of the credibility and demeanor of witnesses is one that is accorded particular deference.") The evidence at the evidentiary hearing on Taylor's recantation established that Taylor first claimed to a defense investigator that Pearson did not shoot the victim, (Dkt. 17-11, p. 377-87), but later told a contradictory story to Officer Jimenez confirming that Pearson was the shooter. *Id.* at 396-404. As the trial court observed, Taylor's testimony was not only "impaired, vague, [and] uncertain," but her credibility was also impeached. *Id.* at 417. Additionally, there was other evidence placing Pearson at the scene with a gun in his hand, including Pearson's own statement. Without clear and convincing evidence to the contrary, the state

Pearson admitted to his involvement in the shooting—corroborating much of the testimony of the State's witnesses (that the victim pulled up alongside Pearson, that Pearson had a gun in his hand, that Pearson held the gun partly inside the car and pointed at the victim) with the twist that the gun fired by accident. However, the fact that Pearson confessed that he was prepared to shoot at the victim's car if he drove away coupled with Pearson's plea to his girlfriend to blame the killing on someone else rebuffs his claim that the murder occurred inadvertently. (Dkt. 17-10, p. 1181, 1183-84.) Thus, any alleged deficiency as a result of counsel not requesting a limiting instruction fails to establish ineffective assistance of counsel because there is no reasonable probability the outcome of trial would have been different given the overwhelming evidence that Pearson deliberately shot and killed the victim. *See Wadley v. Gaetz*, 348 F. App'x 148, 151 (7th Cir. 2009) (non-precedential opinion) (finding no *Strickland* prejudice where there was overwhelming evidence of petitioner's guilt, including his post-arrest confession and corroborating testimony of two witnesses). The state appellate court's resolution of this claim was not unreasonable. Claim Two is denied.[8]

### C.     Claim Three: Speedy Trial Rights

For Pearson's third claim, he argues that he was denied his constitutional right to a speedy trial because he was not brought to trial within 120 days of being taken into custody. (Dkt. 1,

---

trial court's rejection of Taylor's recantation testimony was reasonable, as was the state appellate court's conclusion that the significant weight of the evidence against Pearson did not warrant a finding of *Strickland* prejudice. (Dkt. 17-1, p. 15.)

8 The Court notes Pearson's argument that "the combination of errors," i.e., the admission of "other crimes" evidence and counsel's failure to ask for a limiting jury instruction, "resulted in a substantial and injurious effect on the proceeding. (Dkt. 1, p. 38.) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 638 n. 9 (1993)). Satisfaction of *Brecht* alone, however, is not sufficient to warrant habeas relief. *See Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022). "[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either this Court's equitable precedents [such as *Brecht*] or AEDPA [§2254(d)]. But to *grant* relief, a court must find that petitioner has cleared both tests." *Id.* (emphasis in original). Pearson cannot clear § 2254(d) on either his evidentiary-due process claim or his ineffective assistance of counsel claim. Thus, regardless of whether Pearson can satisfy *Brecht*'s substantial and injurious inquiry, he is not entitled to habeas corpus relief. *Brown*, 142 S. Ct. at 1531.

p. 16-25); (Dkt. 20, p. 4-5.) Pearson contends the violation of the 120-day speedy trial rule was caused by a continuance requested in bad faith by the State under the guise that more time was needed to obtain material evidence. *Id.* at 25-27, 42.

Although the Sixth Amendment guarantees that a criminal defendant enjoys "the right to a speedy and public trial," the Supreme Court has not established a specified time period within which a criminal defendant must be brought to trial. *See Barker v. Wingo*, 407 U.S. 514, 523 (1972) ("We find no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months.") In Illinois, however, a criminal defendant "shall be tried … within 120 days from the date he or she was taken into custody" subject to certain exceptions. 725 ILCS 5/103-5(a). Though the Constitution and the Illinois statute both address an accused's right to a speedy trial, the two are not coextensive, and Illinois's 120-day rule does not define when a constitutional speedy-trial right is violated. *See People v. Phipps*, 933 N.E.2d 1186, 1193 (Ill. 2010). In other words, a claim that a prisoner's statutory right to a speedy trial was violated does not raise a constitutional issue. *Id.*; *People v. French*, 262 N.E.2d 901, 903-04 (1970) ("an allegation of a violation of the 120-day rule in bringing a defendant to trial is not constitutional in scope").

Pearson conflates his constitutional right to a speedy trial with his statutory right. Specifically, he claims that because trial began after the 120-day speed-trial period had expired, "his right to be tried within 120 days as guaranteed under the United States Constitution" was violated. (Dkt. 1, p. 27.) His argument in this Court repeats his claim in the Illinois courts that the State failed to try him within 120 days. *See* (Dkt. 17-4, p. 13-20) (Petitioner's postconviction appellate brief argued Pearson's speedy trial rights were violated where he was not brought to trial within 120 days). But as noted above, the Supreme Court has refused to define the constitutional

19

speedy-trial right "into a specified number of days or months." *Barker*, 407 U.S. at 523. Pearson's argument that he was not brought to trial within 120 days is grounded in Illinois' speedy trial statute; it does not implicate a federal constitutional right. As noted above, an error of state law does not present a cognizable issue for federal habeas review. *See Williams v. Chrans*, 894 F.2d 928, 937 (7th Cir. 1990) (holding petitioner's challenge to Illinois' 120-day rule was not cognizable on federal habeas review).

Even if Pearson establishes in this Court that the State violated Illinois' 120-day rule, he must be able to satisfy the test to determine that his constitutional speedy-trial right was violated to be entitled to habeas corpus relief. *See Dellinger v. Brown*, 301 F.3d 758, 764 (7th Cir. 2002) ("Federal habeas relief is only available to a person in custody in violation of the United States Constitution or laws or treaties of the United States.") (citing 28 U.S.C. § 2254(a)). For a constitutional speedy-trial violation, "four factors [] bear on the question" as to whether Pearson was "deprived of the right: the '[l]ength of delay, the reason for the delay, the [] assertion of his right, and prejudice.'" *O'Quinn v. Spiller*, 806 F.3d 974, 977 (7th Cir. 2015) (quoting *Barker*, 407 U.S. at 530). Although Pearson lists these factors in his supporting memorandum, his argument simply restates his 120-day challenge within the context of *Barker*'s criteria (e.g., "Length of Delay: The delay of untolled time totaled 206 days which was 86 days beyond the constitutional right to be tried within 120 days.").[9] (Dkt. 1, p. 42-43.)

---

[9] Beyond Pearson's repackaged argument, the length-of-delay factor would arguably weigh against conducting a full *Barker* analysis. This factor "acts as a triggering mechanism; unless a presumptively prejudicial amount of time elapsed…it is unnecessary to conduct a searching analysis of all the factors." *Ashburn v. Korte*, 761 F.3d 741, 752 (7th Cir. 2014). The Seventh Circuit has recognized that a delay longer than one year is presumptively prejudicial, triggering the full *Barker* analysis. *O'Quinn v. Spiller*, 806 F.3d 974, 977 (7th Cir. 2015). Pearson initially appeared in court on the murder charges on September 26, 2002, and was brought to trial less than 11 months later on August 4, 2003. (Dkt. 17-10, p. 5-8, 113-14.) Because Pearson's alleged delay does not meet the one-year trigger, it would appear a full *Baker* analysis would not be necessary. *Compare O'Quinn*, 806 F.3d at 977 (proceeding to full *Barker* analysis was appropriate where 42-month delay met threshold inquiry); *and Ashburn*, 761 F.3d at 752 (finding "the total delay of 20 months exceeded a year, but not extraordinarily so, so this factor only weigh[ed] moderately in [petitioner's] favor"), *with Wilkins v. Superintendent*, No. 3:14-CV-585, 2016 WL 1431917, at *2 (N.D. Ind. Apr. 11,

In any event, Pearson failed to present a *Barker* argument to the state court. Indeed, the state appellate court on postconviction appeal (the last state court to address this claim), held Pearson's speedy trial claim was not cognizable in a postconviction petition because it was "based only on the statutory speedy-trial right" and Pearson did not "argue or allege the elements of a constitutional claim, notably, prejudice is neither alleged nor argued."[10] *Pearson*, 2020 IL App (2d) 180066-U, ¶¶ 31-32 (citing *Barker*, 407 U.S. at 530). State courts must be afforded "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Shinn*, 142 S. Ct. at 1732. "Ultimately, 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without [giving] an opportunity to the state courts to correct a constitutional violation.'" *Id.* (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)). Pearson did not give the state appellate court an opportunity to address his constitutional claim, instead alleging only a statutory violation. To the extent he tries to reformulate his statutory speedy-trial challenge as a constitutional one in his § 2254 petition, the claim is procedurally defaulted. *Sanders*, 48 F.4th at 509.

As noted above, Pearson presents no new evidence establishing his actual innocence and, thus, cannot excuse the procedural default of his claim under the miscarriage-of-justice exception. *See Jones*, 842 F.3d at 461. Additionally, as discussed further below, his ineffective assistance of appellate counsel claim as to this issue was not properly preserved in state court proceedings and,

---

2016) (denying habeas corpus petitioner's speedy trial claim because 8-month delay was insufficient to trigger full *Barker* analysis). The Court will not explore this issue further because even if Pearson's 120-day speedy-trial argument could be construed as a constitutional issue, the claim is procedurally defaulted.

10 Illinois' Post-Conviction Hearing Act "provides a procedure for persons under criminal sentence to claim that their convictions resulted from a substantial denial of their constitutional rights" under the Constitution of the United States or of the State of Illinois or both. *People v. Treadwell*, --- N.E.3d ---, 2022 WL 4115223, *5 (Ill. App. Ct. 2022); 725 ILCS 5/122-1(a). "The purpose of a postconviction proceeding is to allow a defendant to raise constitutional issues that were not, and could not have been, decided on direct appeal." *Treadwell*, 2022 WL 4115223, *5 (citation omitted).

therefore, cannot constitute cause to excuse the procedural default. *See Lewis*, 390 F.3d at 1026. Claim Three is denied.

### D.      Claim Four:   Ineffective Assistance of Appellate Counsel

Pearson's final contention is that he was denied the effective assistance of appellate counsel where his appellate attorney failed to argue the speedy trial issue on direct review. (Dkt. 1, p. 6, 25); (Dkt. 20, p. 6.) In addition to the speedy trial claim, Pearson further argues that appellate counsel failed to raise multiple issues that had been preserved for direct review, including challenges to witness testimony, physical evidence, and his confession. (Dkt. 20, p. 6.)

"Before addressing the merits" of Pearson's ineffective assistance claim on postconviction appeal, the state appellate court (the last state court to address this claim) first observed that "the trial court was justified in dismissing the claim of ineffective assistance of counsel" because the "single-sentence, factually bereft, allegation in the amended postconviction petition" did not "make the necessary substantial showing of deprivation of [Pearson's] right to effective assistance of counsel." *Pearson*, 2020 IL App (2d) 180066-U, ¶ 36; *see* (Dkt. 17-9, p. 385) (Pearson's ineffective assistance claim alleged only that appellate counsel was ineffective for "fail[ing] to allege and argue each of the previously stated Constitutional violations."). Pearson's failure to fairly present this claim in state court deprived the state court from addressing it, thus resulting in a procedural default. *See Shinn*, 142 S. Ct. at 1732.

Not only did the state appellate court determine that Pearson insufficiently presented his ineffective assistance claim to the trial court, but the appellate court also concluded that it was precluded from reaching the merits of Pearson's ineffective assistance claim because he failed to adequately preserve his argument for appeal. *Pearson*, 2020 IL App (2d) 180066-U, ¶¶ 37, 42. The ineffective assistance argument presented in Pearson's amended postconviction petition, albeit

22

insufficiently pled, was premised on his argument that his speedy trial rights were violated because the State's extension was sought in bad faith as the DNA testing was not material to the case. (Dkt. 17-9, p. 382-85.) On appeal, however, Pearson altered the basis of his ineffective assistance argument, contending instead that his trial attorney was ineffective for not arguing his speedy trial rights were violated because the State did not exercise due diligence in obtaining the DNA testing before requesting an extension. (Dkt. 17-4, p. 13-20.)

As a result of the shift in Pearson's argument, the state appellate court concluded that Pearson had forfeited his ineffective assistance of appellate counsel claim because the due-diligence argument was not presented to the state trial court in his postconviction petition. *Pearson*, 2020 IL App (2d) 180066-U, ¶ 37; *see People v. Shief*, 62 N.E.3d 1154, 1165 (Ill. App. Ct. 2016) (holding ineffective assistance claim forfeited where the reasons for the appellate attorney's alleged ineffectiveness raised on postconviction appeal were distinctly different from those raised in petitioner's postconviction petition); *see also* 725 ILCS 5/122-3 ("Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived.").

There are two ways in which a § 2254 claim can be procedurally defaulted. The failure to exhaust state court remedies, discussed above, is one; the "independent and adequate state ground doctrine" is the other. *Thomas*, 822 F.3d at 384 (citing *Coleman*, 501 U.S. at 729-30). Federal habeas review is precluded "where the state courts declined to address a petitioner's federal claims because [he] did not meet state procedural requirements." *Id.* at 384. "'A state law ground is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case.'" *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012) (quoted case

omitted). "'A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied.'" *Id.*

Forfeiture is one example of an independent and adequate state ground supporting a judgment. *See Szabo v. Walls*, 313 F.3d 392, 395 (7th Cir. 2002). "A state is entitled to treat as forfeited a proposition that was not presented in the right court, in the right way, and at the right time—as state rules define those courts, ways, and times. Failure to comply with the state's procedural rules furnishes an independent and adequate state ground of decision that blocks federal collateral review. *Id.* (citations omitted).

The state appellate court's conclusion that Pearson forfeited his ineffective assistance claim by failing to present his argument "in the right way" constitutes an independent and adequate state ground. This Court is therefore precluded from entertaining his ineffective assistance claim on federal habeas review. *See Oaks v. Pfister*, 863 F.3d 723, 726 (7th Cir. 2017). Additionally, the fact that the state appellate court reached an alternative holding addressing the merits of Pearson's ineffective assistance claim does not affect the Court's conclusion that this claim is procedurally defaulted.

A state court may rely on a state procedural ground to deny a claim and then, in the alternative, determine that the claim lacks merit. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.") (emphasis in original). Thus, "even if the court rejected [petitioner's] claim as meritless," "[federal habeas] review is foreclosed when adequate and independent state law grounds are sufficient to resolve the dispute." *Whyte v. Winkleski*, 34 F.4th

617, 627 (7th Cir. 2022), *reh'g denied*, No. 21-1268, 2022 WL 3326896 (7th Cir. Aug. 11, 2022). Because the state appellate court clearly found Pearson forfeited his ineffective assistance claim by failing to adequately present his argument, and only considered the claim on the merits in the alternative, Claim Four is procedurally defaulted.

Pearson cannot excuse the procedural default of this claim. "Because a prisoner does not have a constitutional right to counsel in state postconviction proceedings," any alleged claim that Pearson's postconviction attorney was ineffective in preserving his ineffective assistance of appellate counsel claim for postconviction appeal does not qualify as cause to excuse the procedural default of this claim. *Davila*, 137 S. Ct. at 2062. And, as has been discussed at length, Pearson points to no new evidence to support an actual innocence claim to establish the fundamental miscarriage of justice exception.

Finally, with respect to Pearson's claim that his appellate counsel failed to raise other myriad issues that had been preserved for appeal, this argument was raised for the first time in his reply brief and is therefore waived. *See Stechauner v. Smith*, 852 F.3d 708, 721 (7th Cir. 2017) ("Arguments raised for the first time in a reply brief are waived.") (citation omitted). In any event, Pearson did not exhaust any other ineffective assistance claim beyond the speedy trial issue on postconviction review. (Dkt. 17-7) (Pearson's postconviction PLA argued only that appellate counsel was ineffective for failing to raise speedy trial issues); *see Boerckel*, 526 U.S. at 848 (failing to present a federal claim in a PLA to the Illinois Supreme Court results in a procedural default of that claim). As mentioned above, Pearson cannot excuse his procedural default. Claim Four is denied.

For the reasons stated above, Pearson is not entitled to federal habeas corpus relief on any of his claims. Because the state court record precludes habeas corpus relief, Pearson is not entitled

to an evidentiary hearing. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *Westray v. Brookhart*, 36 F.4th 737, 754 (7th Cir. 2022) ("no federal evidentiary hearing is permitted when the state court has already addressed the issue," and the § 2254 petition cannot satisfy the requirements of § 2254(b) and (d)) (citation omitted); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). His habeas corpus petition is denied.

## II.    Notice of Appeal Rights and Certificate of Appealability

Pearson is advised that this is a final decision ending his case in this Court. If Pearson wishes to appeal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Pearson need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Pearson wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

The Court declines to issue a certificate of appealability. Such a certificate "may not issue 'unless the applicant has made a substantial showing of the denial of a constitutional right'" or error with this Court's procedural determinations. *Slack v. McDaniel*, 529 U.S. 473, 483 (2000)

(quoting 28 U.S.C. § 2253(c)). Pearson must show that reasonable jurists could debate whether this Court should have resolved his claims differently or that the issues are "adequate to deserve encouragement to proceed further." *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing *Slack*, 529 U.S. at 484) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Pearson cannot meet this standard.

## CONCLUSION

Pearson's habeas corpus petition (Dkt. 1) is denied on the merits. Any pending motions are denied as moot. The Court declines to issue a certificate of appealability. The Clerk is instructed to: (1) terminate Respondent David Gomez, and replace him with Pearson's current custodian, Charles Truitt, Warden, Stateville Correctional Center; (2) alter the case caption to *Pearson v. Truitt*; and (3) enter a judgment in favor of Respondent and against Petitioner. Civil Case Terminated.

ENTERED:

_____
IAIN D. JOHNSTON
United States District Judge

Date: October 31, 2022